# IN THE COURT OF APPEALS OF IOWA

No. 18-2142
Filed June 19, 2019

**IN THE INTEREST OF S.A.,**
**Minor Child,**

**M.A., Father,**
    Appellant,

**T.K., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

The mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Stephen K. Allison, Berwick, and Shawn Smith, Ames, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

ConGarry D. Williams, Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Mullins, JJ.

**POTTERFIELD, Presiding Judge.**

The mother and father separately appeal the termination of their parental rights to their daughter, S.A., who was born in December 2015. S.A. was removed from their custody in April 2017 after police were called to the family home in response to a domestic-violence incident. In November 2018, the juvenile court terminated both the mother's and the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2018). Both parents argue the State has not shown by clear and convincing evidence that S.A. cannot be returned to them. Additionally, the mother argues the juvenile court should have granted her a deferral of permanency for six months instead of terminating her parental rights.

**I.      Standard of Review.**

We review termination cases de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

**II.     Discussion.**

We use a three-step analysis to review termination of parental rights:

First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (citations omitted).

The juvenile court terminated both the mother's and father's parental rights pursuant to section 232.116(1)(h). Under that section, the State must prove four elements:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). Neither parent disputes the first three elements. S.A. was less than two and a half years old at the time of the August and September 2018 termination hearing, had been adjudicated a child in need of assistance, and had been removed from both parents' custody since April 2017. The only element the parents challenge is the existence of clear and convincing evidence showing S.A. cannot be returned to their custody. "Evidence is considered clear and convincing 'when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."'" *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (alteration in original) (citation omitted). We discuss the evidence in regard to each parent separately.

**a. Grounds for Termination.**

There is clear and convincing evidence in the record that S.A. could not be safely returned to either parent's care at the time of the termination hearing. Turning first to the father, we acknowledge that he has made some progress over the course of these proceedings. He made some efforts to attend mental-health

therapy and received certification for completing domestic violence awareness classes. These improvements, however, do not offset the fact he continued to struggle with drug addiction through the day of the August 2018 termination-of-parental-rights (TPR) hearing. The evidence suggests he was not committed to dealing with his substance-abuse problem. He completed a substance-abuse evaluation in June 2017 but did not follow recommendations. He has repeatedly denied use of illegal substances despite testing positive for cocaine and methamphetamine throughout the proceedings. He repeatedly failed to have sweat patches removed on the days specified by the Iowa Department of Human Services (DHS). He tested positive for amphetamines and methamphetamine on the same day as the August 2018 TPR hearing, and he continued to deny drug use at the second day of the TPR hearing in September 2018. The father's continued use of methamphetamine throughout this proceeding and up until the day of the August 2018 TPR hearing weighs in favor of terminating his parental rights. *See In re T.B.*, No. 18-1139, 2018 WL 4361181, at *2 (Iowa Ct. App. Sept. 12, 2018) (collecting cases terminating parental rights when a parent has an ongoing drug addiction).

Turning next to the mother, we conclude clear and convincing evidence shows that S.A. could not be returned to her care either. While the mother has similarly made progress over the course of these proceedings, much of her improvement has only come after the August 2018 TPR hearing. The mother did not comply with requested drug screenings throughout the proceedings, although her most recent drug screenings before the August 2018 TPR hearing came back clean. She denied drug use to DHS throughout the proceedings, and only

admitted to consistently using methamphetamine while testifying at the September 2018 TPR hearing. She also has significant mental-health issues and was diagnosed with generalized anxiety disorder, panic disorder, and moderate depressive disorder, single episode. Her visits with S.A. were professionally supervised after she had an outburst and needed to be physically removed from a visitation. The mother was in jail from June 2017 until January 2018. While there she was placed in her own cell in the psychiatric unit due to "random outbursts and mental health instabilities." By the day of the August 2018 TPR hearing, she had attended at most six individual mental-health therapy sessions.[1] Finally, both the DHS and the Family Safety, Risk, and Permanency (FSRP) staff assigned to the case testified during the September 2018 TPR hearing that the mother could not adequately care for S.A. at that time.

Further evidence related to domestic violence supports terminating both parents' parental rights. The record shows a long history of domestic violence between the parents since before these proceedings, with a number of incidents involving police intervention. The incident which led to S.A. being removed from the parents' custody involved the father yelling at the mother and pulling her hair, and the mother brandishing a knife and knocking over furniture. Both parents have faced criminal charges regarding their behavior toward the other parent. The mother had obtained a no-contact order against the father which was active during the September 2018 TPR hearing. At that hearing, the FSRP worker assigned to the case testified the father had violated that order. While both

---

[1] The record reflects that the mother attended only seven individual therapy sessions between March 2018 and September 2018, with a lapse between May and August due to issues with insurance, and that the seventh session occurred in September 2018.

parents insisted that domestic violence will not be an issue going forward because they no longer live together, the record shows that after being released from jail the mother moved into a home directly adjacent to the home in which the father lives. The mother testified she did not intend to move in next to the father's family, but other testimony suggests the mother at least knew the father's family lived there before she moved in. In light of this evidence, we agree with the juvenile court that neither parent's home was safe for S.A. at the time of the September 2018 TPR hearing.

To the extent the mother challenges the juvenile court's denial of her request for additional time to work toward reunification, we conclude the juvenile court properly denied her request. Section 232.104(2)(b) permits reunification where "the need for removal . . . will no longer exist at the end of the additional six-month period." S.A. was removed from the mother's custody in April 2017. The permanency plan adopted in June 2017 required both parents to seek treatment related to their issues involving substance abuse, mental health, and domestic violence. The mother did not make meaningful efforts to do so until a few months before the August 2018 TPR hearing and, as noted above, concerns for the mother's mental health and close proximity to the father were present at the August 2018 TPR hearing. "The 'legislature has established a limited time frame for parents to demonstrate their ability to be parents.'" *A.S.*, 906 N.W.2d at 474 (citation omitted). "Children simply cannot wait for responsible parenting." *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) (quoting *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990)). We agree with the juvenile court that the concerns raised by

the evidence in the record will not be resolved in six months. We therefore agree with the juvenile court's decision to not grant an extension.

Clear and convincing evidence supports the termination of both the mother's and father's parental rights under section 232.116(1)(h). Neither parent challenges whether termination is in S.A.'s best interest or contends any statutory factors weighing against termination apply. As such, we do not consider those issues. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

**AFFIRMED ON BOTH APPEALS.**